

FILED

2012 Feb-23  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL ARENDT, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 2:11-cv-01936-LSC |
| | ] |
| SERRA CHEVROLET, INC., ET AL., | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

The Court has for consideration Defendants' "Motion to Stay Action and Require Plaintiff to Submit his Disputes to Binding Arbitration." (Doc. 5.) The motion has been briefed by the parties[1] and is ripe for review.

I.    Background.

Michael Arendt entered into a "Retail Installment Sales Contract" ("RISC") with Defendants on June 8, 2010, in order to purchase a 2010 Hyundai Elantra.

---

[1] Plaintiff filed a motion for leave to file a surreply. (Doc. 11.) In support of his motion, Arendt contends that Defendants raised a new legal issue in their reply—namely, whether language in the arbitration clause constitutes a "class waiver." The Court finds that Defendants did not raise a new issue in its reply memorandum. However, even if the "class waiver" issue were new, it is not an issue upon which this Court bases its decision. As acknowledged later in this Opinion, whether the arbitrator can certify a class or hear class claims is a procedural question that is reserved for the arbitrator. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010). Plaintiff's motion for leave to file a surreply is DENIED.

Under the RISC, Arendt was the buyer and defendant Serra Chevrolet, Inc., was the creditor.  Arendt agreed to pay $500.00 at the time of signing, and $500.00 in two weeks, for a total of $1,000.00 for a down payment.  Arendt also agreed to trade in his existing vehicle, and Defendants agreed they would transfer the tires from his existing vehicle to the new Elantra.

On June 15, 2010, Defendants called Arendt and told him financing was not approved by Hyundai Finance, but they had arranged for financing with a different entity.  When Arendt returned to the dealership to sign the new paperwork, he was informed that he would need to pay more money for the same terms in the original contract plus an increased interest rate.  Arendt contends that he rejected the new terms and asked for his old vehicle.  Defendants refused to give him his old vehicle and "forced him to accept the new vehicle."  (Compl. ¶ 22.)  Arendt signed a Retail Buyers Order ("RBO") with Defendants on June 30, 2010.  The RBO includes an arbitration clause, which states in pertinent part:

> Purchaser/Lessee and Seller voluntarily waive any right to a jury trial and further agree as follows:
> (1) Seller and Purchaser/Lessee agree to submit any dispute(s0 between Purchaser/Lessee and Seller (or any of Seller's employees or agents), or any dispute(s) arising out of or related to this contract, to binding arbitration in accordance with 9 USC §1 et seq. and the Better Business Bureau ("BBB") Rules of Binding Arbitration for Disputes Subject to Pre-Dispute Binding Arbitration Clauses in the county where the Seller

maintains its principal place of business.  Without limiting the generality of the foregoing, Seller and Purchaser/Lessee intend to resolve by binding arbitration all claims between them (whether based on tort, contract, statutory, or equitable law, or otherwise) relating to: the vehicle or its sale, lease, or financing; any documents signed or given in connection with the transaction; any negotiations, including any representations, promises, or omissions; arrangements or disclosures for financing or leasing; . . . or any traded-in vehicle. . . .

(6) In the event the Purchaser/Lessee and the Seller have entered into more than one arbitration agreement, the parties hereto agree that the terms of this arbitration agreement shall control. . . .

(Doc. 5-1 at 4.)

Plaintiff attempts to bring a class action on behalf of "[a]ll persons in the United States who have signed a RISC with Defendants and their affiliated dealerships and whose initial RISC was cancelled by Defendants or their affiliated dealerships." (*Id.* ¶ 23.) He alleges that he and other purported class members are victims of "deceptive business practices arising from 'yo-yo' or 'spot delivery' car sales." (*Id.* ¶ 1.) The Complaint includes claims for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; and violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*

II.    Analysis.

"Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), written agreements to arbitrate a dispute arising out of a transaction involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007).  "The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically."  *Id.* (quoting *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002)).  Therefore, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."  *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)).

The parties agree that Alabama law governs the contracts in this case.  Arendt does not dispute that the arbitration provision at issue is written and arises out of a transaction involving commerce.  Arendt does not maintain that he did not agree to the arbitration provision when he signed the RBO on or around June 30, 2010.[2]

---

[2]In the final sentence of his opposition memorandum, Plaintiff asks the Court for limited discovery "if the court has any reservations about denying defendants' motion to compel arbitration," so Arendt can "show that the actions of defendants are unconscionable and create an illusory arbitration agreement."  (Doc. 8 at 12-13.)

"Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence."  *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002) (citing *Green Tree Fin. Corp. v.*

Instead, Plaintiff contends that his claims fall under the first contract, the RISC, and not the RBO.  This argument does not negate Plaintiff's obligation to submit his dispute to binding arbitration under the RBO.  Arendt concedes that the RISC "contained identical arbitration language." (Doc. 8 at 4.) Plaintiff further admits that the RISC and RBO are two contracts "executed by the same consumer at two different times for the same car." (*Id*. at 3.)  The RBO's arbitration clause provides: "In the event the Purchaser/Lessee and the Seller have entered into more than one arbitration agreement, the parties hereto agree that the terms of this arbitration agreement shall control. . . ." (Doc. 5-1 at 4.)  The RBO's clause also specifies that the parties will arbitrate: "*all claims* between them (whether based on tort, contract, statutory, or equitable law, or otherwise) *relating to: the vehicle* or its sale, lease, or

---

*Wampler*, 749 So.2d 409, 415, 417 (Ala. 1999)).  "[A]rbitration agreements are not in themselves unconscionable." *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005) (citing *Ex parte McNaughton*, 728 So. 2d 592, 597-98 (Ala. 1998)).  An unconscionable contract provision is, instead, one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Id*. (quoting *Southern United Fire Ins. Co. v. Howard*, 775 So. 2d 156, 163 (Ala. 2000)).

Plaintiff has not made any attempt to establish that the arbitration clause at issue is unconscionable, nor hinted at the existence of any evidence that would show unconscionability. *See, e.g.*, *Ex parte Greenstreet, Inc.*, 806 So. 2d 1203, 1209 (Ala. 2001) ("[I]f the party opposing a properly supported motion to compel arbitration desires discovery, that party must present a factually based predicate before a right to conduct discovery regarding matters that could invalidate the agreement to arbitrate arises.") (citing  *Ex parte Dickinson*, 711 So. 2d 984 (Ala. 1998); *Premiere Auto. Group v. Welch*, 794 So. 2d 1078 (Ala. 2001); and *Ex parte Jim Burke Auto., Inc.*, 776 So. 2d 118 (Ala. 2000)).  Accordingly, to the extent Plaintiff's request can be construed as a motion for discovery and a stay of this Court's decision on Defendants' motion to compel, the motion is DENIED.

financing; *any documents* signed or given in connection with the transaction; any negotiations, including any representations, promises, or omissions; arrangements or disclosures for financing or leasing." (*Id.* (emphasis added).)  The broad language of the arbitration clause clearly encompasses any claim Plaintiff seeks to make under the previously-signed RISC.  *See, e.g.*, *Alabama Title Loans, Inc. v. White*, --- So. 3d ---- , 2011 WL 2739652 at *5-7 (Ala. July 15, 2011).

Plaintiff also attempts to defeat Defendants' motion to compel arbitration by arguing that he did not agree to arbitrate class claims.  Arendt points to a provision in the RBO's arbitration clause that states: "[T]he Arbitrator is not authorized to certify a class or to decide claims asserted on behalf of others alleged to be similarly situated . . . ." (Doc. 5-1 at 4.)  Defendants are correct, however, that the question for this Court is not whether the arbitrator can certify a class or hear class claims—but whether Plaintiff agreed to submit his claims against Defendants to arbitration.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.") (quotations omitted).  The plain language of the arbitration clause at issue states that Arendt agreed to submit "all claims" related to the sale and financing of the 2010

Hyundai Elantra, and any documents he signed in connection with that sale and financing, to arbitration.  Plaintiff is bound by that agreement.

Nonetheless, Arendt further contends that even if his claims are subject to a binding arbitration clause, Defendants are estopped from compelling arbitration because they argued in earlier state court litigation, with different purchasers, that the arbitration clause in a RISC was not binding because funding was never approved. "Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006) (quoting *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005).  "A district court may invoke the doctrine to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* (quotations omitted). "[C]ourts have traditionally looked at three factors: (1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an

unfair detriment on the opposing party if not estopped." *Id.* (quoting *Transamerica Leasing*, 430 F.3d at 1335).  None of these factors is satisfied in this case.  The state court never accepted Defendants' position in the earlier litigation; the case was dismissed without prejudice prior to any ruling by the court.  More importantly, Defendants seek to compel arbitration under the second contract—not the RISC. Defendants' prior argument that the arbitration clause in the RISC was not binding because financing was never approved does not affect its argument that Plaintiff is bound by the arbitration provision in the RBO.  As previously stated, Plaintiff's claims are clearly encompassed by the arbitration provision in the RBO.

III.    Conclusion.

   For the reasons outlined above, Defendants' motion to compel arbitration will be granted.  To the extent Defendants' motion seeks a stay in this case while the parties arbitrate, the motion will be denied.  Defendants have not proffered any reason why the Court should retain this case.  A separate order will be entered.

   Done this 23rd day of February 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297